United States District Court
Southern District of Texas
**ENTERED**
September 08, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

HUMANA HEALTH PLAN, INC., §
§
        Plaintiff, §
§
v. §     CIVIL ACTION NO. H-13-1793
§
PATRICK NGUYEN, DAVID ABNEY, §
and CRADY, JEWETT, & §
MCCULLEY, LLP, §
§
        Defendants. §

## MEMORANDUM OPINION AND ORDER

Pending before the court are Defendant/Counter-Plaintiff's Motion for Summary Judgment (Docket Entry No. 91), and Plaintiffs' Joint Motion for Summary Judgment (Docket Entry No. 92). For the reasons stated below, the cross motions for summary judgment will be denied, and docket call will be held at 3:00 p.m. on Friday, October 14, 2016.

## I. Standard of Review

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. Fed. R. Civ. P. 56(c). The Supreme Court has interpreted Rule 56(c) to mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v.

<u>Catrett</u>, 106 S. Ct. 2548, 2552 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact." <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (<u>en banc</u>). If the moving party meets this burden, Rule 56(c) requires the nonmovant to present admissible evidence creating genuine issues of material fact for trial. <u>Id.</u> An issue is genuine if there is sufficient evidence for a reasonable fact finder to return a verdict for the nonmoving party, and material if it would affect the outcome of the lawsuit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2510 (1986). Only disputes over genuine issues of material fact will properly preclude summary judgment. "Factual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> "When parties file cross-motions for summary judgment, [courts] review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" <u>Cooley v. Housing Authority of City of Slidell</u>, 747 F.3d 295, 298 (5th Cir. 2014)(quoting <u>Ford Motor Co. v. Texas Department of Transportation</u>, 264 F.3d 493, 498 (5th Cir. 2001). <u>See also Shaw Constructors v. ICF Kaiser Engineering, Inc.</u>, 395 F.3d 533, 538-39 (5th Cir. 2004), <u>cert. denied</u>, 126 S. Ct. 342 (2005)("Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.").

## II.  **Undisputed Facts**

At all relevant times Patrick Nguyen ("Nguyen") was a participant in the API Employee Benefits Plan ("Plan").[1] The Plan is a self-funded plan sponsored by API Enterprises, Inc. ("API"), and governed by ERISA, 29 U.S.C. §§ 1001, et seq.[2] Amy Manuel ("Manuel") was the named Plan Administrator and Plan Fiduciary.[3] Patrick Sanders ("Sanders") was API's corporate counsel and the Nguyen family's attorney.[4] On July 13, 2009, API and Humana Health

────────────────

[1]See Statement of Undisputed and Material Facts in Support of Plaintiffs' Joint Motion for Summary Judgment ("Plaintiffs' Statement of Facts"), Exhibit 1 to Plaintiffs' Joint Motion for Summary Judgment ("Plaintiffs' JMSJ"), Docket Entry No. 92-1, p. 2 ¶ 6 (citing First Amended Complaint, Docket Entry No. 74, p. 2 ¶ 8, and Defendant's First Amended Answer, Docket Entry No. 78, p. 2 ¶ 8 ("Defendant admits the allegations in Paragraph 8.").

[2]Id. at 1 ¶ 1 (citing First Amended Complaint, Docket Entry No. 74, p. 1 ¶ 1, and Defendant's First Amended Answer, Docket Entry No. 78, p. 1 ¶ 1 ("Defendant disputes Plaintiffs' standing to bring this action to enforce the terms of the API Employee Benefits Plan ("Plan") but admits that this action is governed by ERISA.").

[3]Defendant/Counter-Plaintiff's Motion for Summary Judgment ("Defendant's MSJ"), Docket Entry No. 91, p. 7 ¶ 5 ("The Plan designated API employee Amy Manuel to act as Plan Administrator."); Plaintiffs' Statement of Facts, Exhibit 1 to Plaintiffs' JMSJ, Docket Entry No. 92-1, p. 1 ¶ 5 ("Amy Manuel serves as Plan Administrator and Plan Fiduciary." (citing Oral Deposition of Amy Manuel ("Manuel Deposition"), pp. 35:8-10 and 40:3-5, Exhibit 8 to Plaintiffs' JMSJ, Docket Entry No. 92-8, pp. 10-11)).

[4]Defendant's MSJ, Docket Entry No. 91, p. 8 ¶ 8 (recognizing Patrick Sanders as API's General Counsel); Plaintiffs' Statement of Facts, Docket Entry No. 92-1, p. 2 ¶ 9 ("Patrick Sanders ('Sanders') is API's General Counsel and the Nguyen family's counsel.") (citing Manuel Deposition, p. 17:12-13, Exhibit 8 to Plaintiffs' JMSJ, Docket Entry No. 92-8, p. 5, and Oral Deposition of Patrick Nguyen ("Nguyen Deposition"), Exhibit 10 to Plaintiffs' JMSJ, Docket Entry No. 92-10, pp. 36:24-38:2).

Plan ("HHP") executed a Plan Management Agreement ("PMA") pursuant to which HHP served as the Plan Manager, but the Plan Administrator retained discretion to interpret the terms of the Plan and determine questions of eligibility for Plan participation.[5]  In pertinent part the PMA states

> 1.8  <u>Plan Administrator (or Administrator)</u> means the person named in the documents describing the Plan as responsible for the operation and administration of the Plan.  If no such person is identified, then the person establishing or maintaining the Plan will be deemed to be the Plan Administrator.

> . . .

> 1.9  <u>Plan Manager</u> means Humana Health Plan, Inc., acting in accordance with this Agreement.

> ARTICLE II
> Relationship Between the Parties

> 2.1  In performing its obligations under this Agreement, the Plan Manager operates within a framework of the Plan's management policies and practices authorized or established by the Plan Administrator, in accordance with the provisions of the Plan.  In this context, the Plan Manager's normal operating procedures, practices and rules will be followed unless they are inconsistent with the Plan's management policies or practices.

> 2.2  The Plan Manager does not have discretionary authority or responsibility in the administration of the Plan.  The Plan Manager will not exercise discretionary authority or control respecting the disposition or management of assets of the Plan.

---

[5]Defendant's MSJ, Docket Entry No. 91, p. 7 ¶ 5 ("The Plan contracted with Humana Health to provide administrative services for the Plan.  The terms of this relationship were memorialized in a Plan Management Agreement.  *Exhibit 1*."); Plaintiffs' Statement of Facts, Exhibit 1 to Plaintiffs' JMSJ, Docket Entry No. 92-1, p. 1 ¶ 2 ("Humana Health Plan ('HHP') is the Plan Manager.").

2.3   The Plan Administrator and not the Plan Manager is
ultimately responsible for interpreting the
provisions of the Plan and determining questions of
eligibility for Plan participation.

2.4   Accordingly, except as may otherwise be expressly
provided herein, the Plan Manager is not a trustee,
sponsor, or fiduciary with respect to directing the
operation of the Plan or managing any assets of the
Plan.[6]

API was covered by a stop-loss policy of insurance ("Stop-Loss Policy") underwritten by Humana Insurance Company ("HIC") pursuant to which HIC agreed to pay claims that exceeded applicable stop-loss deductible amounts.[7] The Stop-Loss Policy contains a clause providing that HIC "shall be subrogated to the rights of the Policyholder, and shall be entitled to be reimbursed first from any net proceeds subsequently recovered from responsible third parties, their insurers or others who may be responsible to pay or indemnify the Covered Person. . ."[8]

In April of 2012 Nguyen was injured in an automobile accident, and from April 14, 2012 to April 5, 2013, the Plan paid $274,607.84

---

[6]PMA, Docket Entry No. 91-2, pp. 1-2.

[7]Defendant's MSJ, Docket Entry No. 91, p. 19 (recognizing existence of a "stop loss contract between API and Humana Insurance"); Plaintiffs' Statement of Facts, Exhibit 1 to Plaintiffs' JMSJ, Docket Entry No. 92-1, p. 1 ¶ 3 (citing Stop Loss Policy, Exhibit 3 to First Amended Complaint, Docket Entry No. 74-3). See also Declaration of Brian Bargender ("Bargender Declaration"), Exhibit 2 to Plaintiffs' JMSJ, Docket Entry No. 92-2, p. 2 ¶ 9.

[8]2009 Stop-Loss Policy, Exhibit 1 to Declaration of Brian Bargender, Docket Entry No. 92-3, p. 4 Section 7.

in medical expenses for Nguyen arising from the accident.[9]  Nguyen recovered $255,000.00 from an Under Insured Motorist ("UIM") Policy, and $30,000.00 from the tortfeasor's automobile policy, for a recovery totaling $285,000.00 ("Settlement Funds").[10]

### III.  **Procedural Background**

On June 16, 2013, HHP filed a Verified Complaint (Docket Entry No. 1) against Nguyen, Nguyen's attorney, David Abney ("Abney"), and Abney's law firm, Crady, Jewett, & McCulley, LLP, under 29 U.S.C. § 1132(a)(3) seeking to enforce the terms of the Plan and require Nguyen to reimburse the Plan $274,607.84 for benefits paid on his behalf from the Settlement Funds that Nguyen received from third parties.[11]  On June 20, 2013, the court entered a Temporary Restraining Order (Docket Entry No. 6), restraining defendants and others acting in concert with them from disposing of the Settlement Funds.  On July 2, 2013, the court entered an Agreed Preliminary Injunction (Docket Entry No. 13) pursuant to which the Settlement

---

[9]Defendant's MSJ, Docket Entry No. 91, p. 7 ¶¶ 5-6 (citing Nguyen Deposition, pp. 29:15-17, 32:10-19, Exhibit 4 to Defendant's MSJ, Docket Entry No. 91-5, pp. 8-9); Plaintiff's Statement of Facts, Exhibit 1 to Plaintiffs' JMSJ, Docket Entry No. 92-1, p. 2 ¶ 10 (citing First Amended Complaint, Docket Entry No. 74, p. 2 ¶¶ 9-10, and Defendant's First Amended Answer, Docket Entry No. 78, p. 2 ¶¶ 9-10).

[10]Defendant's MSJ, Docket Entry No. 91, p. 7 ¶ 6; Plaintiff's Statement of Facts, Docket Entry No. 92-1, p. 2 ¶ 11.

[11]See Nguyen Deposition, p. 45:8-19, Exhibit 4 to Defendant's MSJ, Docket Entry No. 91-5, p. 12.

Funds were deposited into the registry of the court.   On July 3, 2013, HHP filed a Notice of Voluntary Dismissal of David Abney and Crady, Jewett & McCulley, LLP (Docket Entry No. 18), and the court signed an Order (Docket Entry No. 19) dismissing the claims asserted against those defendants with prejudice leaving Nguyen as the only remaining defendant.

On July 18, 2013, Nguyen filed a Counterclaim against HHP for breach of fiduciary duty (Docket Entry No. 21).

On October 15, 2013, HHP filed a motion for summary judgment, which the court granted on May 2, 2014, after concluding that HHP was a Plan fiduciary with standing to prosecute a reimbursement claim against Nguyen under 29 U.S.C. § 1132(a)(3).   See Humana Health Plan, Inc. v. Nguyen, 17 F.Supp.3d 638, 644-47 (S.D. Tex. 2014).   Nguyen appealed arguing that HHP was not a Plan fiduciary and, thus, did not have standing to seek relief under 29 U.S.C. § 1132(a)(3).   On May 11, 2015, the Fifth Circuit reversed and remanded stating:

> The district court erred in determining that Humana is an ERISA fiduciary for two reasons.   First, the district court's interpretation of the PMA is not persuasive.   The district court focused on the subrogation and recovery clause and determined that its broad language gave Humana independent power to investigate and prosecute claims, even over the Plan's objections.   But the relevant language merely defines the range of potential disputes covered by the contract; it says nothing about who has the right to finally decide whether to investigate or pursue a claim. . .
>
> Second, even if we interpret the PMA to give Humana broad power, the district court failed to explain why Humana is

not a ministerial agent. Humana's various duties outlined in the subrogation and recovery clause describe the tasks performed by many law firms and collections agencies. And the mere fact that Humana serves as the Plan's legal or collections agent is insufficient to show that Humana was the Plan's fiduciary, unless specific facts show that Humana exercised discretion as described in § 1002(21)(A)(i) and (iii). *See* 29 C.F.R. § 2509.75-5, at D-1. . . *cf. Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 709 (7th Cir. 1999) (holding that person was an ERISA fiduciary because plan had *assigned* [to that attorney] legal right to reimbursement, and "[b]y virtue of the assignment," the attorney obtained "broader power than that of a lawyer hired to handle a claim, or of an ordinary collection agent").

We hold that the subrogation and recovery clause does not show that Humana is an ERISA fiduciary. Accordingly, we hold that the district court erred when it determined that Humana was an ERISA fiduciary based on the language of that clause. Because the district court based its decision on its interpretation of the subrogation and recovery clause, we have not had to consider other evidence that might show whether Humana exercised actual, decision-making authority over the plan or its assets. *Cf. Musmeci v. Schwegmann Giant Super Mkts., Inc.* 332 F.3d 339, 351 (5th Cir. 2003) (explaining that this court uses "functional approach" to determine whether purported fiduciaries exercise discretionary control over ERISA plans); *Hatteberg v. Red Adair Co. Emps.' Profit Sharing Plan*, 79 Fed. Appx. 709, 716 (5th Cir. 2003 ) (per curiam) (explaining that "factual matter" showing alleged fiduciary's actual role are "key"). Because we reverse and remand on statutory standing grounds, we do not decide whether the district court erred on the merits.

Humana Health Plan, Inc. v. Nguyen, 785 F.3d 1023, 1028-29 (5th

Cir. 2015).

Following remand HHP sought leave to amend to add HIC as an

additional plaintiff and to assert that pursuant to the Stop-Loss

Policy that HIC issued to API, "HIC is subrogated to the rights of

API and is entitled to be reimbursed first from proceeds recovered

from any parties responsible to pay or indemnify a Covered Person

-8-

under the Plan."[12]   HHP argued that "HIC is required to be joined
under Rule 19 of the Federal Rules of Civil Procedure because
failure to join HIC will impair and impeded its ability to protect
its interest and/or leave the parties subject to a substantial risk
of incurring multiple or inconsistent obligations."[13]
Alternatively, HHP argued that it "should be allowed to join HIC in
this action pursuant to Rule 20 of the Federal Rules of Civil
Procedure because HIC's claims arise out of the same transaction or
occurrence, or series of transactions or occurrences, as the claims
currently pending. . .,"[14] and that "HIC should be allowed to join
this action as a permissive plaintiff because it seeks the same
relief as HHP."[15]   HHP explained that its motion to amend was filed

> on the heels of this matter being remanded by the Fifth
> Circuit for further proceedings to determine HHP's
> fiduciary status.  Based upon the initial proceedings in
> this Court, HHP did not believe that HIC's joinder was
> necessary to the proceedings.  However, after the Fifth
> Circuit questioned HHP's authority to pursue the claims,
> it became necessary for HIC to assert its rights under
> the Stop-Loss Policy.  HHP still believes that the facts
> will illustrate that it has fiduciary standing in this
> case, but HIC also has enforceable rights as a subrogee
> of API, which it is entitled to present to this Court.[16]

---

[12]Plaintiff Humana Health Plan, Inc.'s Motion for Leave to Join
Additional Parties and to Amend the Verified Complaint, Docket
Entry No. 67, p. 2 ¶ 5.

[13]Id. at 2 ¶ 9.

[14]Id. at 2-3 ¶ 10.

[15]Plaintiff Humana Health Plan, Inc.'s Memorandum or Law
Supporting Its Motion for Leave to Join Additional Parties and to
Amend the Verified Complaint, Docket Entry No. 68, p. 3.

[16]Id. at 4-5.

Although Nguyen opposed HHP's motion to amend by arguing that "allowing HHP to amend its complaint would unduly prejudice Nguyen by increasing the delay and by expanding the allegations beyond the scope of the initial complaint,"[17] and that "the delay between the filing of the original complaint and the motion for leave to amend could have been avoided by due diligence, as HHP could have raised the additional claims . . . or at least sought to amend long ago,"[18] the court granted HHP's motion to amend (Docket Entry No. 73).

Citing 29 U.S.C. § 1132(a)(3), Plaintiffs' First Amended Complaint states that

> 21. . . . the Plan seeks equitable relief, including, but not limited to, equitable lien by agreement, equitable lien to enforce ERISA and the terms of the Plan, restitution, and imposition of a constructive trust with respect to the Disputed Funds.
>
> 22. By refusing to cooperate with the Plan to protect its rights and refusing to reimburse the Plan to the extent of benefits paid out of the amount Nguyen recovered, Nguyen has violated the terms of the Plan.
>
> 23. Since these acts and/or practices violate the Plan's terms, this Court should enter an order enforcing the terms of the Plan and requiring Nguyen to reimburse the Plan in the amount of $274,607.84.
>
> 24. Under the express terms of the Stop-Loss Policy, HIC is subrogated to the rights of API and has first priority right of recovery up to the full amount of Stop-Loss benefits paid on Nguyen's behalf.

---

[17]Response to Plaintiffs' Motion for Leave to Join Additional Parties and to Amend the Verified Complaint, Docket Entry No. 71, p. 2 ¶ 8.

[18]Id.

25.  As subrogee, HIC holds all rights, duties, and claims belonging to API — the Named Fiduciary of the Plan — with respect to third-party recoveries or reimbursement efforts to the full extent of benefits paid under the Stop-Loss Policy.

26.  Thus, HIC has fiduciary standing to seek full reimbursement, pursuant to 29 U.S.C. § 1132(a)(3), of any and all payments made under the Stop-Loss Policy.[19]

Plaintiffs also seek rescission of the Stop-Loss Policy and restitution based on Nguyen's false and misleading statements used to procure coverage under the Plan.[20]  HHP seeks judgment requiring Nguyen to turn over to the Plan $274,607.84, and to pay pre-judgment and post-judgment interest, reasonable attorneys' fees and costs.[21]  Alternatively, HIC seeks a judgment requiring Nguyen to turn over to HIC the full amount of benefits paid under the Stop-Loss Policy, or at least $209,607.84, and award HIC appropriate pre-judgment and post-judgment interest, and other relief to which HIC is entitled including reasonable attorneys' fees and costs.[22]

## IV.  **Analysis**

The Fifth Circuit remanded this action upon concluding that this court erred in finding that HHP was a Plan fiduciary with standing to seek reimbursement from Nguyen under ERISA.  Nguyen,

---

[19]First Amended Complaint, Docket Entry No. 74, pp. 5-6 ¶¶ 21-26.

[20]Id. at p. 7 ¶¶ 30-36.

[21]Id. at 7-8 (Prayer for Relief).

[22]Id. at 8.

785 F.3d at 1030 (remanding "for further proceedings . . .
beginning with a reexamination of the issue of Humana's standing").
In the amended complaint filed following remand, HHP and HIC allege
that they are both Plan fiduciaries with standing to seek
reimbursement.[23]  Nguyen disagrees.

## A.   Applicable Law

"The express grant of federal jurisdiction in ERISA is limited
to suits brought by certain parties . . . as to whom Congress
presumably determined that a right to enter federal court was
necessary to further the statute's purpose."  <u>Franchise Tax Board
of the State of California v. Construction Laborers Vacation Trust
for Southern California</u>, 103 S. Ct. 2841, 2852 (1983)).  "[C]ertain
parties" include plan fiduciaries.  29 U.S.C. § 1132(a)(3).[24]  Under

---

[23]First Amended Complaint, Docket Entry No. 74, p. 1 ¶ 2 ("HHP
is the Plan Manager and a fiduciary of the Plan, which is self-
funded and covered by ERISA and, as such, is entitled to bring this
action pursuant to 29 U.S.C. § 1132(a)(3)."); 6 ¶ 26 (" 26. . . .
HIC has fiduciary standing to seek full reimbursement, pursuant to
29 U.S.C. § 1123(a)(3), of any and all payments made under the
Stop-Loss Policy.").

[24]29 U.S.C. § 1132(a) provides:

A civil action may be brought-

    . . . . .

(3) by a participant, beneficiary, or fiduciary (A) to enjoin
any act or practice which violates any provision of this
subchapter or the terms of the plan, or (B) to obtain other
appropriate equitable relief (i) to redress such violations
or (ii) to enforce any provisions of this subchapter or the
                                              (continued...)

ERISA a plan fiduciary is someone who is named as a fiduciary in written plan documents, see 29 U.S.C. § 1102(a), or someone who exercises discretionary control or authority over the plan's management, administration, or assets.  29 U.S.C. § 1002(21)(A). See Mertens v. Hewitt Associates, 113 S. Ct. 2063, 2066 (1993). Acknowledging that under ERISA the term "fiduciary" has been liberally construed, Nguyen, 785 F.3d at 1026 (citing Reich v. Lancaster, 55 F.3d 1034, 1046 (5th Cir. 1995)), the Fifth Circuit has stated that

> the broad definition of fiduciary is still constrained in at least two ways.  First, third-party service providers can serve as ERISA fiduciaries in one capacity and non-fiduciaries in another.  See Pegram [v. Herdrich,] 120 S. Ct. 2143 [(2000)] (explaining that "persons who provide services to an ERISA plan" may operate with a conflict of interest, so long as they comply with fiduciary duties while acting in fiduciary capacity).  Thus, when courts evaluate whether a party is an ERISA fiduciary, they must focus on the specific role the purported fiduciary played as relevant to the claim at hand.  See id. at . . . [2152-53] (holding that, "[i]n every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . whether that person was acting as a fiduciary . . . when taking the action subject to complaint").
>
> Second, not every act that could be described as "discretionary" in the general sense makes the actor a fiduciary under ERISA.  For almost forty years, the Department of Labor has maintained that "a person who performs purely ministerial functions," such as the "[p]reparation of reports concerning participants' benefits" or "[m]aking recommendations to others for decisions with respect to plan administration," is not an ERISA fiduciary.  29 C.F.R. § 2509.75-8, at D-2.  This is because

---

[24](...continued)
 terms of the plan.

> a person who performs purely ministerial
> functions . . . for an employee benefit plan
> within a framework of policies,
> interpretations, rules, practices and
> procedures made by other persons . . . does
> not have discretionary authority or
> discretionary control respecting management of
> the plan, does not exercise any authority or
> control respecting management or disposition
> of the assets of the plan, . . . and has no
> authority or responsibility to do so.

Id. at 1026-27.

The Fifth Circuit stated that broad language in the PMA's subrogation and recovery clause "defines the range of potential disputes covered by the contract; [but] says nothing about who has the right to finally decide whether to investigate or pursue a claim." Id. at 1028.  The Fifth Circuit explained that

> [u]nder the Department of Labor's interpretations . . .
> the power to collect claims on behalf of the ERISA plan
> is not discretionary per se.  There are at least two
> relevant factors that tip the scales between a
> ministerial employee and a fiduciary.  First, the court
> must consider whether the plan administrator has set up
> "a framework of policies, interpretations, rules,
> practices and procedures" for the third-party to follow.
> See 29 C.F.R. § 2509.75-8, at D-2. . . If the plan
> administrator has established such a framework, the court
> must consider whether the plan administrator is actively
> supervising the agent's performance of the assigned task.
> See 29 C.F.R. § 2509.75-8, at D-2. . . One hallmark of
> active supervision is a requirement that the third-party
> submit a recommendation to the plan administrator for
> approval before the third-party takes further action.  If
> the plan administrator is actively supervising the claims
> agent, then the fact that the agent is empowered to
> initiate legal action for the plan does not prove the
> agent is a fiduciary.  See 29 C.F.R. § 2509.75-5, at D-1.
>
> Accordingly, in considering whether . . . as a matter of
> law that [HHP] is an ERISA fiduciary under § 1132(a)(3),
> we focus on the specific role that [HHP] undertook
> regarding subrogation and recovery services.  And we ask

-14-

> whether API provided a framework of policies and
> procedures to guide [HHP], and supervise [HHP] as it
> executed its task.

Id. at 1028.


## B.   Nguyen's Motion for Summary Judgment

Nguyen argues that he is entitled to summary judgment because the Fifth Circuit "remanded for discovery on very limited issues. Discovery has revealed that Plaintiffs lack, and have always lacked, standing to bring this suit. They are not fiduciaries."[25] In the alternative, Nguyen argues that if "Plaintiffs had standing, they breached their fiduciary duty by pursing this reimbursement claim against the instructions of the Plan Administrator — a clear-cut bar to any relief."[26]  Plaintiffs argue that Nguyen's motion for summary judgment should be denied because "HHP has conducted subrogation-and-reimbursement activities according to its own standard operating procedures, without any input, guidelines, policies, practices, interpretations, rules, or procedures from the Plan; or any supervision whatsoever,"[27] and because "no proper summary-judgment evidence shows that the Plan directed HHP not to pursue reimbursement in this case."[28]

---

[25]Defendant's MSJ, Docket Entry No. 91, p. 5.

[26]Id. at 6.

[27]Response in Opposition to Patrick Nguyen's Motion for Summary Judgment ("Plaintiffs' Opposition to Defendant's MSJ"), Docket Entry No. 94, p. 3.

[28]Id. at 11.

1.   Nguyen Fails to Establish as a Matter of Law that HHP Is Not a Plan Fiduciary with Respect to the Reimbursement Claim at Issue

Asserting that "[t]he [Fifth] Circuit remanded this case with the warning that 'until [HHP] adduces at least some evidence showing that API failed to guide and supervise its operations, [HHP] cannot show that it has the right to seek relief under § 1132(a)(3),' [Nguyen, 785 F.3d at 1030]," [29] Nguyen argues that "evidence actually gathered shows that API provided guidance, supervision, and specific instructions to [HHP] regarding subrogation, specifically, when dealing with an employee's own individual UM/UIM policy." [30]   Citing the deposition of HHP's corporate representative, Brian J. Bargender ("Bargender"), Nguyen argues that HHP admitted that it was required to follow the Plan's instructions as to how to process reimbursement claims:

> Q.   Okay.  So what you're indicating to me is if API had instructed Humana in this particular case that they wanted subrogation/reimbursement handled in a particular way, then Humana Health would have to follow that direction?
>
> Mr. Howard: Object as to form.  Misstates prior testimony.  But go ahead and answer if you can.
>
> A.   Okay.  So if someone who is authorized by the plan gives us instruction on how to process claims, then Humana would be processing claims that way.  You know, we may advise that, you know, this is not what we believe is in the best interest of the plan, but we would ultimately follow the instruction.

---

[29]Defendant's MSJ, Docket Entry No. 91, p. 10.

[30]Id.

-16-

Q.   Okay.   Just want to make sure we're absolutely
     clear on that.  And if Humana didn't follow that
     instruction, they would be violating the [PMA]?

A.   I believe so.[31]

As evidence that HHP received — but failed to follow — the Plan's instructions not to pursue a reimbursement claim against him, Nguyen cites Bargender's deposition testimony, a July 12, 2013, letter from API's General Counsel, Sanders, to Mike Mann ("Mann"), president of Eustis Benefits, LLC ("Eustis"), API's broker, and an unsigned waiver of rights prepared by HHP's counsel with signature lines for Sanders and Nguyen's counsel, Abney. Nguyen argues that this evidence shows that API, the Plan, and the Plan's broker all instructed HHP not to pursue a reimbursement claim against him.[32]

In relevant part Bargender testified that in mid 2012 HHP received a letter from Sanders opining that the subrogation provision of the Summary Plan Description ("SPD") should not be enforced against Nguyen, but that because Sanders had not previously been identified as a person authorized by the Plan to communicate with HHP, HHP did not follow Sanders' opinion and, instead, continued to pursue the reimbursement claim against Nguyen.[33]  When asked if "someone authorized to communicate on

---

[31]Id. at 11 (citing Videotaped Deposition of Brian J. Bargender ("Bargender Deposition"), p. 21:4-23, Exhibit 3 to Defendant's MSJ, Docket Entry No. 91-4, p. 8).

[32]Id. at 5.

[33]Bargender   Deposition,   pp.   88:18-94:19,   Exhibit   3   to
                                                     (continued...)

behalf of API [had] communicate[d] to HHP, [']We don't want to pursue subrogation in this case,['] HHP would [have] follow[ed] that direction?"[34] Bargender answered:

> In the perfect scenario where it's the decision maker that you already know about, there's no stop-loss carrier involved, and they say, [']We've made a determination that we're going to waive subrogation on this[,'] and Humana's not responsible for enforcing the SPD, then we would shut down the file.[35]

The July 12, 2013, letter from Sanders to Mann, states that (1) "[f]rom the beginning, API has been of the position that API and/or Humana have no right of subrogation to the policies of insurance which have provided benefits to Mr. Nguyen,"[36] (2) "Humana, through its attorneys Lawrence & Russell have filed legal proceedings in the United States District Court in Houston claiming that it, Humana, is a fiduciary, (not API) under the API Employee Benefits Plan,"[37] and (3) "API hereby requests: 1. That Humana assign counsel to represent the interest of API in the matter as it appears that there is a conflict with the law firm of Lawrence & Russell as said firm appears to be representing the interest of Humana and not API."[38]

---

[33](...continued)
Defendant's MSJ, Docket Entry No. 91-4, pp. 25-26.

[34]Id. at 105:15-18, Docket Entry No. 91-4, p. 29.

[35]Id. at 105:19-25, Docket Entry No. 91-4, p. 29.

[36]Exhibit A to the Affidavit of Patrick Sanders ("Sanders Affidavit"), Exhibit 5 to Defendant's MSJ, Docket Entry No. 91-6, p. 12.

[37]Id. at 13.

[38]Id.

The waiver of rights prepared by HHP's counsel with a signature line for Sanders as API's counsel, was attached to a February 20, 2013, letter from HHP's counsel to Sanders and Abney stating

> [b]ased on my telephone conversations with Mr. Abney, my understanding is that API Enterprises, Inc. ("API") does not wish to assert its rights of subrogation or reimbursement with regard to benefits it paid on behalf of Patrick Nguyen. In light of API's decision, Humana is asserting its right of subrogation, pursuant to the terms of the [Group Stop-Loss Policy]. . .
>
> . . .
>
> The terms of the Policy, providing that Humana is subrogated to the rights of API, permit Humana to step into the shoes of API with regard to third party recoveries or reimbursements.[39]

The letter asked Sanders and Abney to sign an attached waiver of rights that stated:

> The undersigned counsel confirm that API Enterprises, Inc., Policyholder to the Group Stop-Loss issued by Humana Insurance Company ("Humana"), waives its rights to any and all of the subrogation/reimbursement proceeds that Humana may recover through assertion of its subrogation/ reimbursement rights. The undersigned agree that in the event Humana's reimbursement rights are satisfied in full, any amount in excess, not reimbursed to Humana, will be remitted to Patrick Nguyen.[40]

The waiver of rights was not signed by Sanders or Abney.

Nguyen fails to explain and the court fails to see how the evidence that Nguyen cites shows either that the Plan set up "a

---

[39]Exhibit 7 to Defendant's MSJ, Docket Entry No. 91-8, p. 1.

[40]Id. at 2.

framework of policies, interpretations, rules, practices and procedures" for HHP to follow with respect to subrogation and reimbursement services, or that if such a framework existed, the Plan actively supervised HHP's performance of those services. Nguyen, 785 F.3d at 1028. At best, Nguyen's evidence raises fact issues concerning whether API and Sanders or Eustis and Mann were authorized by the Plan either to decide or to communicate to HHP that a subrogation and reimbursement claim should be pursued or waived. Accordingly the court concludes that Nguyen has failed to cite evidence establishing as a matter of law that HHP was not a Plan fiduciary with respect to the reimbursement claim that HHP is asserting against him in this action.

2.   Nguyen Fails to Establish as a Matter of Law that HIC Is Not a Plan Fiduciary with Respect to the Reimbursement Claim at Issue

Nguyen argues that HIC lacks standing to bring this action because "[HIC's] only connection to the Plan is as a stop-loss insurer; therefore, it has no fiduciary relationship to the Plan."[41] Acknowledging that HIC claims fiduciary status based on a provision in the Stop-Loss Policy, Nguyen argues that

> [t]his is both a factual and legal fiction. A review of the stop loss contract between API and [HIC] reveals that the parties never intended to bestow [HIC] with fiduciary status. The Stop-Loss Policy states:

---

[41]Defendant's MSJ, Docket Entry No. 91, pp. 5-6.

> The Policy is a contract solely between the
> Policy Holder [API] and the Company [HIC].
> This Policy does not create — nor should it be
> construed to create — any rights or legal
> relationships between the Company [HIC] and
> the Policy Holder's [API] employees and/or
> their dependents.[42]

Citing Bank of Louisiana v. Aetna U.S. Healthcare, Inc., 468 F.3d

237, 244 (5th Cir. 2006), cert. denied, 127 S. Ct. 1826 (2007),

Nguyen argues that

> [i]f [HIC] has any claim at all, it would be against API,
> not Patrick Nguyen.  However, any breach of contract
> claim against API cannot properly be brought under ERISA
> in this Court.  In Bank of Louisiana v. Aetna, the 5th
> Circuit found that the stop-loss insurer Aetna
> "identifies no cases holding that a stop-loss insurer is
> necessarily a plan fiduciary."[43]

Plaintiffs respond that

> [a]lthough Nguyen is correct that HIC does not have ERISA
> standing to sue Nguyen simply by virtue of its role as
> API's stop-loss insurer, HIC sued to enforce its rights
> *as subrogee of API, Plan Sponsor and Named Fiduciary of
> the API Plan*, pursuant to the subrogation provision in
> the Stop-Loss Policy.[44]

Citing the 2009 and 2012 SPDs, plaintiffs argue that "Nguyen cannot

dispute that API is the Named Fiduciary of the API Plan,[45] or that

---

[42]Id. at 19 (quoting Stop-Loss Policy, Exhibit 3 to First
Amended Complaint, Docket Entry No. 74-3, p. 10).

[43]Id. at 20 (quoting Bank of Louisiana, 468 F.3d at 244).

[44]Plaintiffs' Response in Opposition to Defendant's MSJ, Docket
Entry No. 94, p. 14 (citing First Amended Complaint, Docket Entry
No. 74, pp. 4-5 ¶¶ 14-17, and 6 ¶¶ 24-27).

[45]Id. (citing SPD Effective June 1, 2009, p.94, Docket Entry
No. 42-1, p. 98 (listing API as the Plan Administrator, Named
Fiduciary, and Claim Fiduciary), and SPD Effective June 1, 2012, p.
(continued...)

-21-

the Stop-Loss Policy provides that HIC is 'subrogated to the rights of Policyholder [API], and shall be entitled to be reimbursed first from any net proceeds subsequently recovered from responsible third parties . . .'"[46]   Plaintiffs argue that "[b]ecause HIC has asserted its rights as subrogee of the API Plan's Named Fiduciary, API, this Court should conclude that HIC has standing to pursue its § 1132(a)(3) claim against Nguyen."[47]

The Supreme Court has recognized that employers who sponsor ERISA plans wear "two hats," acting as an employer and plan sponsor when they engage in settlor functions such as establishing, funding, amending, or terminating the plan, and acting as a fiduciary when they administer or manage the plan. See Pegram, 120 S. Ct. at 2152.   Whether HIC has fiduciary standing to pursue a reimbursement claim against Nguyen as a subrogee of API depends on whether API acted as merely as an employer and plan sponsor or as a plan administrator or manager with respect to that reimbursement claim at issue.   Nguyen has not only failed to present evidence establishing as a matter of law that API did not act as Plan Administrator or plan manager with respect to the reimbursement claim at issue, but has presented evidence that he contends shows

---

[45](...continued)
96, Docket Entry No. 45-1, p. 102 (listing API as the Plan Administrator, Named Fiduciary, and Claim Fiduciary)).

[46]Id. (citing Stop-Loss Policy, p. 4, Exhibit 3 to First Amended Complaint, Docket Entry No. 74-3, p. 5 Section 7).

[47]Id. at 14-15.

that API did, in fact, act in as Plan Administrator and Plan Fiduciary by instructing HHP not to pursue the reimbursement claim against him.  Thus, the question of whether HIC is a fiduciary with standing to assert a reimbursement claim against Nguyen in this action turns on whether HIC is subrogated to API's rights as Plan Sponsor or as Plan Administrator.  Resolution of this question necessarily turns on facts that can only be developed at trial through the presentation of evidence showing what, if any, actions API took with respect to the reimbursement claim at issue. Accordingly the court concludes that Nguyen has failed establish as a matter of law that HIC is not a Plan fiduciary with respect to the reimbursement claim at issue.

3.  <u>Nguyen Is Not Entitled to Summary Judgment on His Counterclaims for Breach of Fiduciary Duty</u>

Nguyen argues that if plaintiffs are, in fact, Plan fiduciaries, they have breached their fiduciary duty by bringing this action against him because "neither [HHP] nor [HIC] has the authority to unilaterally file suit against an API Plan participant on behalf of the Plan."[48]  The only evidence Nguyen cites in support of this argument is the affidavit of API's General Counsel, Sanders stating his opinion that neither HIC nor HHP has the authority to unilaterally initiate a lawsuit against a Plan participant.[49]

_____

[48]Defendant's MSJ, Docket Entry No. 91, p. 21.

[49]Sanders Affidavit, Exhibit 5 to Defendant's MSJ, Docket Entry (continued...)

Plaintiffs argue that the court should deny Nguyen's motion for summary judgment on his counterclaim for breach of fiduciary duty based on the law-of-the-case doctrine because the Fifth Circuit held that Nguyen failed to properly brief his appeal of the court's denial of his first motion for summary judgment on the breach of fiduciary duty claim asserted against HHP and has therefore waived his ability to reassert that claim now.[50]

> Under the "law of the case" doctrine, "a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in successive stages of the same litigation." Where a final judgment is entered, the case appealed, and the case remanded, a trial judge must adhere on remand to the rulings it made in the case before appeal, assuming that the appellate court has not overturned the rulings.

Federal Deposit Insurance Corp. v. McFarland, 243 F.3d 876, 884 (5th Cir. 2001) (quoting Roboserve, Inc. v. Kato Kagaku Co., 121 F.3d 1027, 1031 (7th Cir. 1997)).

The situation described by McFarland applies to this case because while ruling on the parties' previous cross-motions for summary judgment, the court denied Nguyen's motion for summary judgment on his counterclaim for breach of fiduciary duty and entered final judgment in HHP's favor on May 2, 2014 (Docket Entry No. 47). Nguyen appealed that judgment, and although the Fifth

---

[49](...continued)
No. 91-6, pp. 2-3 ¶ 7.

[50]Plaintiffs' Opposition to Defendant's MSJ, Docket Entry No. 94, pp. 20-21, 25.

-24-

Circuit remanded the case for reexamination of HHP's standing as a Plan fiduciary with respect to the reimbursement claim asserted against Nguyen, the Fifth Circuit expressly held that because Nguyen "[did] not sufficiently address the district court's failure to grant his motion for summary judgment in his appellate brief[,] . . . Nguyen has waived that issue." Nguyen, 785 F.3d at 1030. Because Nguyen waived his appeal of this court's denial of his first motion for summary judgment on his counterclaim for breach of fiduciary duty against HHP, the court is bound to adhere to its prior dismissal of that counterclaim as the law of the case. Id.

Since the breach of fiduciary duty counterclaim was asserted only against HHP, Nguyen is only barred from reasserting a breach of fiduciary counterclaim against HHP. Nguyen's motion for summary judgment on the breach of fiduciary duty counterclaim asserted against HIC will be denied because it is based solely on Sanders' legal conclusions and does not establish entitlement to judgment as a matter of law.

## C.   Plaintiffs' Joint Motion for Summary Judgment

Plaintiffs argue that they are entitled to summary judgment on their claims for reimbursement because "HHP is an ERISA fiduciary over the claims at issue and it has a right to seek relief under 29

U.S.C. § 1132(a)(3),"[51] and because API's Stop-Loss Policy "subrogates HIC to the rights of the Plan and entitles HIC to a first-priority right of reimbursement over any stop-loss benefits paid on behalf of a Plan participant."[52]  Plaintiffs argue that "[b]ecause the Plan's terms unambiguously entitled the Plan to reimbursement from Nguyen's recovery, this Court should grant HIC's and HHP's motion and enter a judgment requiring Nguyen to reimburse the Disputed Funds to HIC and HHP."[53]

    1.    <u>Plaintiffs Fail to Establish as a Matter of Law that HHP Is a Plan Fiduciary with Respect to Reimbursement Claims</u>

Plaintiffs argue that HHP was a Plan fiduciary with respect to reimbursement claims because the Plan did not provide any policies, interpretations, rules, or procedures for HHP to follow,[54] the Plan did not supervise HHP's handling of such claims,[55] and the Plan Administrator did not exercise discretion with respect to such claims.[56]  In support of these arguments plaintiffs cite excerpts from the Manuel and Bargender depositions, which they argue show

---

[51]Plaintiffs' JMSJ, Docket Entry No. 92, p. 1 ¶ 1.

[52]<u>Id.</u> at ¶ 2.

[53]<u>Id.</u> at 2 ¶ 6.

[54]Plaintiffs' Statement of Facts, Exhibit 1 to Plaintiffs' JMSJ, Docket Entry No. 92-1, pp. 5-7 ¶¶ 19-31.

[55]<u>Id.</u> at 7-8 ¶¶ 32-43.

[56]<u>Id.</u> at 8-9 ¶¶ 44-51.

that Manuel, the person who all agree served as the named Plan
Administrator, neither provided HHP a framework of policies and
procedures to guide HHP in executing subrogation and recovery
services, nor supervised HHP's execution of those services.  For
example, as evidence that the Plan did not provide HHP a framework
of policies and procedures to guide its execution of subrogation-
and-recovery services, plaintiffs cite testimony showing that
Manuel never proposed an alternative or exception to HHP's normal
subrogation-and-recovery procedures,[57] and never provided HHP with
any procedures, guidelines, rules, practices, or interpretations of
the Plan to follow when providing subrogation-and-recovery
services.[58]  As evidence that the Plan did not supervise HHP's
execution of subrogation-and-recovery services, plaintiffs cite
excerpts from Manuel's deposition showing that HHP never sought her
permission to pursue a reimbursement claim, and that except for
Nguyen's case, Manuel was not aware that HHP ever sought or
obtained a reimbursement from any Plan participant.[59]  Plaintiffs

---

[57]Id. at 5-6 ¶ 24 (citing Manuel Deposition, pp. 92:8-93:21,
Exhibit 8 to Plaintiffs' JMSJ, Docket Entry No. 92-8, p. 24). See
also Bargender Deposition, pp. 131:1-132:13, Exhibit 9 to
Plaintiffs' JMSJ, Docket Entry No. 92-9, pp. 36-37.

[58]Id. at 6-7 ¶¶ 25-31 (citing Manuel Deposition, pp. 90:24-
92:2, 122:12-123:10, 162:20-163:20, Exhibit 8 to Plaintiffs' JMSJ,
Docket Entry No. 92-8, pp. 24, 32, 42). See also Bargender
Deposition, pp. 131:1-132:13, 141:14-142:5, Exhibit 9 to
Plaintiffs' JMSJ, Docket Entry No. 92-9, pp. 36-37 and 39.

[59]Id. at 7-8 ¶¶ 38-40 (citing Manuel Deposition, pp. 51:6-54:10
(continued...)

-27-

also cite the Bargender Declaration as evidence that HHP has investigated approximately 297 subrogation-and-recovery matters for the Plan, obtained recoveries in nine such matters, two of which were from a Plan participant's own personal injury or med-pay insurance, has closed approximately 276 subrogation-and-recovery matters without recovery, has never been required to obtain permission from the Plan before closing such a matter, and has twelve open subrogation-and-recovery matters.[60]

Nguyen does not dispute that Manuel was the named Plan Administrator, or that Manuel neither provided HHP a framework of policies and procedures to guide HHP in executing subrogation-and-recovery services, nor supervised HHP's execution of those services. Instead, citing excerpts from Bargender's deposition, Nguyen argues that HHP "concedes that when API's policies and procedures are inconsistent with Humana Health's normal procedures relating to reimbursement services, it must administer the Plan consistent with API's policies."[61] Asserting that his case was the

_____

[59](...continued)
and 94:11-14, Exhibit 8 to Plaintiffs' JMSJ, Docket Entry No. 92-8, pp. 14-15 and 25). <u>See also</u> Bargender Deposition, pp. 131:1-132:13, Exhibit 9 to Plaintiff's JMSJ, Docket Entry No. 92-9, pp. 36-37.

[60]<u>Id.</u> at 8 ¶¶ 41-43 (citing Bargender Declaration, Exhibit 2 to Plaintiffs' JMSJ, Docket Entry No. 92-2, p. 2 ¶¶ 4-5).

[61]Defendant's Response to Motion for Summary Judgment ("Defendant's Response"), Docket Entry No. 93, p. 5 ¶ 13 (citing Exhibit 1 thereto, Bargender Deposition, pp. 11-12 and 96-97, (continued...)

only instance in which HHP sought reimbursement from a Plan participant's UM/UIM recovery,[62] Nguyen argues that API's General Counsel, Sanders, and API's broker, Eustis, both directed HHP not to pursue subrogation-and-recovery claims involving such recoveries against him and all other Plan participants,[63] but that HHP ignored that guidance by disingenuously and illogically arguing that API's General Counsel was not authorized to speak on behalf of the Plan.[64] Nguyen argues that HHP

> ignored the specific directions given by API's General Counsel, Patrick Sanders, regarding guidance and direction from the Plan, even though it prepared a document for Mr. Sanders to execute on behalf of the Plan. Humana Health cannot have it both ways. It cannot argue that API's General Counsel was not qualified to speak on behalf of the Plan, yet ask him to sign a document that would bind the Plan.[65]

Citing the Bargender deposition, Nguyen argues that "Humana Health admitted that it would have followed API's direction if API's General Counsel Patrick Sanders was authorized to speak on behalf

---

[61](...continued)
Docket Entry No. 93-1, pp. 5-6, and 8).

[62]Id. at ¶ 14.

[63]Id. at 6 ¶ 16 ("API specifically told Humana Health to stop reimbursement recovery efforts from its employees' UM/UIM recoveries."); 7 ¶ 19 ("API advised Humana Health to stop pursuing reimbursement in all cases involving UM/UIM recoveries. It was not alone in this conclusion. API's broker, Eustis Benefits, LLC . . . agreed with API's conclusion.").

[64]Id. at ¶ 20.

[65]Id. at 8 ¶ 22.

of the Plan,"[66] and admitted that "it was within the power of a Plan Administrator to refuse to enforce [or pursue a reimbursement claim]."[67]

The parties agree that the PMA required HHP to follow its own processes and procedures for processing claims — including reimbursement claims — unless HHP received contrary instructions from the Plan, and that API communicated to HHP that API did not want a subrogation-and-recovery claim initiated or pursued against Nguyen. Plaintiffs argue that HHP ignored API's communication because it came from API's General Counsel, Sanders, and did not come from the named Plan Administrator, Manuel. Since, however, the Fifth Circuit has stated that "'fiduciary' should be defined not only by reference to particular titles, . . . but also by considering the authority which a particular person has or exercises over an employee benefit plan," Donovan v. Mercer, 747 F.2d 304, 308 (5th Cir. 1984), and plaintiffs have themselves cited evidence showing not only that Manuel had no interaction with HHP on the issue of reimbursement claims, but also that the 2009 and 2012 SPDs name API as the Plan Administrator and the Plan Fiduciary,[68] and that HHP's counsel knew that Sanders was authorized

---

[66]Id. at 9 ¶ 24 (citing Exhibit 3 to Defendant's MSJ, Bargender Deposition, pp. 89 and 92, Docket Entry No. 91-4, pp. 25-26).

[67]Id. at 10 ¶ 26 (citing Exhibit 1 thereto, Bargender Deposition, pp. 66-67, Docket Entry No. 93-1, p. 7).

[68]Plaintiffs' Response in Opposition to Defendant's MSJ, Docket
(continued...)

-30-

to speak on behalf of API, questions of whether API was a Plan Administrator, whether Sanders was authorized to communicate with HHP on behalf of API, and whether HHP was therefore obligated to follow Sanders' instructions with respect to the reimbursement claim asserted against Nguyen are issues fact that cannot be resolved on the current record.

   2.   Plaintiffs Fail to Establish as a Matter of Law that HIC
        Is a Plan Fiduciary with Respect to Reimbursement Claims

Citing the Bargender Declaration, plaintiffs argue that HIC has standing to seek reimbursement as to the full amount of benefits paid under the Stop-Loss Policy because:

> 59. HIC issued the Stop-Loss Policy to the API Plan, effective June 1, 2009.
>
> 60. HIC and the API Plan entered into subsequent agreements to amend and renew the Stop-Loss Policy, effective on June 1, 2010, June 1, 2011, and June 1, 2012.
>
> 61. The Stop-Loss Policy has contained a subrogation provision at all relevant times. That provision states:
>
>> THIRD PARTY RECOVERIES OR REIMBURSEMENTS. In the event [HIC] pays a claim under either or both the Aggregate Stop-Loss or Individual Stop-Loss provisions of this Policy, [HIC] shall be subrogated to the rights of [API] and

_____

[68](...continued)
Entry No. 94, p. 14 (citing SPD Effective June 1, 2009, p. 94, Docket Entry No. 42-1, p. 98 (listing API as the Plan Administrator, Named Fiduciary, and Claim Fiduciary), and SPD Effective June 1, 2012, p. 96, Docket Entry No. 45-1, p. 102 (listing API as the Plan Administrator, Named Fiduciary, and Claim Fiduciary)).

shall be entitled to be reimbursed first from
any net proceeds subsequently recovered from
responsible third parties, their insurers or
others who may be responsible to pay or
indemnify the Covered Person or the Covered
Person's estate.  Any balance remaining after
[HIC] has been reimbursed shall then be
credited or remitted to [API].

62.  Pursuant to the Stop-Loss Policy, HIC paid
$146,086.59 to the API Plan to cover medical
expenses for Nguyen in excess of the individual
stop-loss limit of $65,000 for policy periods June
1, 2011 to May 31, 2012, and June 1, 2012 to May
31, 2013.[69]

The Stop-Loss Policy undisputedly contains a clause pursuant

to which HIC is subrogated to the rights of the policyholder, but

the policyholder is API, not the Plan, while the

Reimbursement/Subrogation section of the PMA quoted in the

plaintiffs' complaint refers to the Plan's — not API's — right to

repayment:

The [SPD] contains a "Reimbursement/Subrogation" section
setting forth the Plan's rights of reimbursement and
subrogation, which states:

The *beneficiary* agrees that by accepting and in return
for the payment of *covered expenses* by this Plan in
accordance with the terms of this Plan:

1.  This Plan shall be repaid the full amount of the
*covered expenses* it pays from any amount received
from others for the *bodily injuries* or losses which
necessitated such *covered expenses*.  Without
limitation, "amounts received from others"
specifically includes, but is not limited to,
liability insurance, worker's compensation,

---

[69]Plaintiffs' Statement of Facts, Docket Entry No. 92-1,
pp. 10-11 ¶¶ 59-62 (citing Bargender Declaration, Docket Entry
No. 92-2, p. 3 ¶ 11).

-32-

uninsured motorists, underinsured motorists, "no-fault" automobile med pay payments or recovery from any identifiable fund regardless of whether the *beneficiary* was made whole.

2.  The Plan's right to repayment is, and shall be, prior and superior to the right of any other person or entity, including the *beneficiary*.

3.  The right to recover amounts from others for the injuries or losses which necessitate *covered expenses* is jointly owned by this Plan and the *beneficiary*. This Plan is subrogated to the *beneficiary's* rights to that extent. Regardless of who pursues those rights, the funds recovered shall be used to reimburse this Plan as prescribed above; this Plan has no obligation to pursue the rights for an amount greater than the amount that it has paid, or may pay in the future. The rights to which this Plan is subrogated are, and shall be, prior and superior to the rights of any other person or entity, including the *beneficiary*.[70]

Plaintiffs assert that HIC is a Plan fiduciary with standing to bring this action because it is acting as subrogee of the Stop-Loss Policyholder, API, who is also the Plan Administrator and Plan Fiduciary.[71] But in the statement of undisputed facts attached to their motion for summary judgment, plaintiffs identify API as the Plan Sponsor, and Manuel as the Plan Administrator and Plan Fiduciary.[72] Although Nguyen does not dispute that the Stop-Loss

---

[70]First Amended Complaint, Docket Entry No. 74, pp. 2-3 ¶ 11 (quoting SPD Excerpt attached as Exhibit 2 thereto, Docket Entry No. 74-2, p. 10).

[71]Id. at 4-5 ¶¶ 14-18.

[72]Plaintiffs' Statement of Facts, Docket Entry No. 92-1, p. 1 ¶¶ 4-5 (citing SPD Excerpts, Docket Entry No. 74-2, p. 8 ("The *Plan Sponsor* has established and continues to maintain this Plan for the (continued...)

Policy is valid and enforceable and that its subrogation clause
allows HIC to step into API's shoes, the Supreme Court has
recognized that employers who sponsor ERISA plans wear "two hats,"
acting as a fiduciary to the extent that they administer or manage
the plan and as an employer to the extent they engage in settlor
functions such as establishing, funding, amending, or terminating'
the plan. See Pegram, 120 S. Ct. at 2152. `Plaintiffs have not
only failed to present evidence establishing as a matter of law
that API served as Plan Administrator with respect to the
subrogation-and-recovery claim asserted against Nguyen, but have
argued elsewhere that Manuel served as Plan Administrator, and that
API and API's General Counsel, Sanders, was not authorized to speak
on behalf of the Plan. Thus, the question of whether HIC is a
fiduciary with standing to bring the claims asserted in this action
is an issue that turns on whether HIC is subrogated to API's rights
as Plan Sponsor or as Plan Administrator. Resolution of this
question necessarily turns on facts that can only be developed at
trial through the presentation of evidence showing what, if any,
actions API took to administer the Plan, or to guide and supervise
HHP's processing of reimbursement claims. Accordingly the court

---

[72](...continued)
benefit of its *employees* and their eligible *dependents* as provided
in this document."), and Manuel Deposition, pp. 35:8-10 and 40:3-5,
Docket Entry No. 92-8, pp. 10 (testifying that Manuel serves as
Plan Administrator) and 11 (testifying that Manuel serves as Plan
Fiduciary).

concludes that plaintiffs have failed to cite evidence establishing as a matter of law that HIC is a Plan Fiduciary with standing the assert the ERISA claims alleged in this action.


## V.   Conclusions and Order

For the reasons stated in § IV.B., above, Defendant/Counter-Plaintiff's Motion for Summary Judgment, Docket Entry No. 91, is **DENIED**.   For the reasons  stated in § IV.C, above, Plaintiffs' Joint Motion for Summary Judgment, Docket Entry No. 92, is **DENIED.** The Joint Pretrial Order will be filed by October 7, 2016.  Docket call will be held at 3:00 p.m. on Friday, October 14, 2016, in Courtroom 9B at 515 Rusk Street, Houston, Texas, 77002.  Given the age of this case the court will not extend these deadlines.

**SIGNED** at Houston, Texas, on this **9th** day of September, 2016.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE